IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-194-BO

| | |
|---|---|
| WILLIAM FERRO, A.K.A. BILL FERRO, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>VOLVO PENTA OF THE AMERICAS, LLC, )<br>VOLVO PENTA NORTH AMERICA, INC., and )<br>VOLVO PENTA MARINE PRODUCTS, LLC, )<br>Defendants. ) | **ORDER** |

This matter is before the Court on defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE 8]. The matter has been fully briefed and is ripe for ruling. For the reasons discussed below, the motion to dismiss is granted and the complaint is dismissed.

BACKGROUND

In June 2007, plaintiff purchased a 2006 Cruisers Yacht, model 300, for approximately $107,000. [DE 1 at ¶ 5]. The boat was equipped with two Volvo Penta 5.70Sxi model engines which included an XDP outdrive. *Id.* at ¶ 6. The engines had 24 hours of logged use. *Id.* Plaintiff purchased a third-party extended warranty on the boat. *Id.* at ¶ 8.

According to plaintiff, the XDP outdrives have a common defect in that the "U-joint bellows . . . buckle and make contact with the U-joint during high speed turning or loading maneuvers, which causes water entry and corrosion of the U-joint and gimbal bearing." [DE 1 at ¶¶ 9–10]. Plaintiff states that he experienced XDP outdrive failure "in or about August 2008, June 2009, May 2011, September 2012 and 2015." *Id.* at ¶ 11. When these failures occurred on open water, he and his family were stranded until they could be towed to shore. *Id.* at ¶ 12.

Plaintiff paid approximately $14,000 to repair and replace XDP outdrive parts in July 2008, August 2009, and June 2011. *Id.* at ¶¶ 15–17.

Plaintiff alleges the engine failed again in September 2012 and after "exploring options to sell the Boat" in March 2013, he states that during online research he found evidence based on customer reviews and projected litigation that the XDP outdrives were defective. [DE 1 at ¶¶ 18–19]. After reaching out to defendants via email on March 29, 2013, plaintiff filed a formal complaint. *Id.* at ¶ 20. He was informed that he needed to replace the XDP outdrives. *Id.* at ¶ 21. In June 2013, he paid approximately $3,450 to repair and replace the XDP outdrive parts in lieu of replacing the outdrives. *Id.* at ¶ 22. After this repair, he attempted to minimize the use of the boat but the problems persisted until July 2014 when the XDP drive bellows completely failed. *Id.* at ¶¶ 23–24. In December 2015, he paid approximately $36,389 to completely replace the XDP outdrives. *Id.* at ¶ 25.

On April 20, 2017, plaintiff filed a complaint asserting that defendants (1) violated the Magnuson-Moss Warranty Act; (2) violated North Carolina's product liability statutes by providing an inadequate warning and inadequate design; (3) committed an unfair and deceptive trade practice; (4) was unjustly enriched by receiving defective parts; (5) converted defective parts; and (5) negligently inflicted emotional distress on plaintiff. [DE 1]. On June 1, defendants filed the instant motion to dismiss, arguing that plaintiff has failed to state a claim upon which relief can be granted. [DE 8].

## DISCUSSION

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light

2

most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The complaint must plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss so long as they are integral to the complaint and authentic. Fed. R. Civ. P. 10(c); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A court ruling on a motion to dismiss under Rule 12(b)(6) may also properly take judicial notice of matters of public record. *Sec'y of State for Defence*, 484 F.3d at 705.

Defendants have moved to dismiss each of plaintiff's claims as barred by the applicable statutes of limitations or repose. The Court will address each claim and its timeliness in turn.

3

Plaintiff's first cause of action is a product liability and breach of express and implied warranty claim brought under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* The MMWA does not contain a statute of limitations, but when evaluating timeliness of claims under the MMWA, courts are directed to use the applicable state law. *Yancy v. Remington Arms Co., LLC*, No. 1:10-CV-918, 2013 WL 5462205, at *5 (M.D.N.C. Sept. 30, 2013). North Carolina applies a four-year statute of limitation to breaches of warranty on the sale of goods, beginning upon accrual of the claim, which is either (1) tender of delivery, or (2) if the goods were sold with a warranty for future performance, the date when the defect was or should have been discovered as long as it remains within the life of the express warranty terms. *Id.* While the discovery rule applies if goods are sold with a warranty for future performance, it "does not extend the life of an express warranty beyond its terms." *Id.*

Plaintiff purchased the boat used in June 2007, and replaced engine parts in July 2008, August 2009, June 2011, and June 2013. Plaintiff attached a document to his complaint which he purports is a two-year warranty on all replacement parts. [DE 1-1].

Even assuming the two year warranty attached to the complaint applies,[1] and even assuming the period of that warranty would begin at the time the boat was purchased used by defendant in 2007, nonetheless the warranty and limitations period expired long before plaintiff filed his complaint. Plaintiff argues that a new two-year warranty period was started each time he bought and installed replacement parts on the boat's engine. However, the plain terms of the warranty attached to the complaint shows that this is not the case, because it states:

---

[1] As pointed out by defendants, the last page of the warranty attached as Exhibit A to the complaint contains a timestamp in the upper right corner evidencing a May 2015 date. [DE 1-2 at 4]. While plaintiff has not explained this discrepancy or provided details as to how this particular warranty applied to any of the alleged repair parts, for purposes of reviewing the motion to dismiss the Court will assume that warranty applies.

4

> All products, including engines, transmissions, components, parts and accessories which were replaced or repaired during the warranty or additional coverage period at no cost to the owner/end customer, will receive the remainder of the original warranty period for such products. For example, if a product is registered for warranty in Product Center and is entitled to a 24 month warranty period, and a warranty repair is performed after 22 months, any parts replaced or repaired at that time will receive the remaining 2 months warranty coverage.

[DE 1-2 at 4]. According to these terms, a new warranty period did not begin with each installation of new parts, but instead a single two-year warranty term applied to the original engine and parts, and any replacement parts received any remainder of that term which was still in force. This is the only warranty that plaintiff has given details on or argued applies to the allegedly defective parts he replaced, and the terms of this warranty show that it expired, at the latest, in 2009. Therefore, the limitations period for any warranty claims expired in 2013 at the latest, long before plaintiff filed this complaint in 2017.

Plaintiff's second and third claims allege inadequate warning under N.C. Gen. Stat. § 99B-5 and inadequate design or formulation under N.C. Gen. Stat. § 99B-6. The repose period for actions under N.C. Gen. Stat. § 99B-5 and § 99B-6 that accrue before October 1, 2009 is six years, which commences on the date of initial purchase for use or consumption. N.C. Gen. Stat. § 1-50(6); *see Bernick v. Jurden*, 293 S.E.2d 405, 413 (1982) ("Although labeled a statute of limitations, G.S. § 1-50(6) is more properly referred to as a statute of repose in that it places a cap or outer limit on the time period within which a products liability action may be brought irrespective of when the claim accrues."). For claims that accrue after October 2009, North Carolina law states that "[n]o action for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than 12 years after the date of initial purchase for use or consumption." N.C. Gen. Stat. § 1-46.1(1).

Plaintiff argues that the date of initial purchase for use or consumption under these statutes is the date upon which the consumer purchased the defective product for use on its own or as a component within a larger system, not the date upon which the larger system itself was initially purchased. Plaintiff therefore argues that he must only show that the defective replacement parts—not the engine or boat in which they were installed—were initially purchased within the time allowed by the applicable repose period. In support, plaintiff cites two cases from the North Carolina Court of Appeals which considered, for purposes of determining whether a claim was brought within the repose period, the tender date of delivery of component parts that were installed in a larger system. *See Robinson v. Bridgestone/Firestone North American Tire, L.L.C.*, 703 S.E.2d 883 (N.C. Ct. App. 2009); *Chicopee, Inc. v. Sims Metal Works, Inc.*, 391 S.E.2d 211 (N.C. Ct. App. 1990). The Court agrees with plaintiff that North Carolina courts apply the repose period to the date of purchase of individual parts, and so this Court will do the same.

Plaintiff purchased replacement parts in July 2008, August 2009, June 2011, and in June 2013. The 2008 and 2009 purchases each accrued before October 2009, are subjected to the six-year statute of repose, and are therefore time-barred. N.C. Gen. Stat. § 1-50(6). Each of the later purchases accrued after the repose period was amended to 12 years, and so plaintiff's product liability claims for these replacement parts are not time-barred. N.C. Gen. Stat. § 1-46.1(1).

Plaintiff's fourth cause of action claims a violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). The statute of limitations for a claim under the UDTPA is four years. N.C. Gen. Stat. § 75-16.2. An unfair and deceptive trade practice claim accrues "when the right to institute and maintain a suit arises." *Hinson v. United Fin. Servs., Inc.*, 473 S.E.2d 382, 386–87 (N.C. Ct. App. 1996) (quoting *Barbee v. Atlantic Marine Sales &*

*Service*, 446 S.E.2d 117, 122, *disc. review denied*, 448 S.E.2d 516 (1994)). In other words, the cause of action "accrues when the violation occurs." *Id.*

Plaintiff bases his UDTPA claim on alleged misrepresentations by defendants concerning alleged defects in the XDP drives. Plaintiff claims that defendants acted committed an unfair and deceptive act when they "attempt[ed] to wrongfully delay or prevent legal action from the Plaintiff," and he asserts that defendants withheld information about the outdrive defects, the problems resulting from the outdrive defect, safety issues, and impact of the defect on resale value. [DE 1 at ¶ 57]. However, plaintiff acknowledges that he discovered these alleged violations when defendants told him that he needed to completely replace the XDP Outdrives in March 2013. [DE 1 at ¶ 21]. Moreover, plaintiff alleges that in March 2013 he "came to suspect that the XDP outdrives were defective" and he "began exploring options to sell the Boat." [DE 1 at ¶ 19]. He also alleges that he discovered at this time issues with respect to the XDP outdrives going back to August 2008. *Id.* at ¶ 11. Therefore, plaintiff's UDTPA claim accrued in March 2013, when he discovered the alleged violations by defendants, and thus this claim expired four years later in March 2017, prior to plaintiff filing his complaint.

Plaintiff's next two causes of action assert unjust enrichment and conversion. These claims are based on defendants' alleged "forcing" of plaintiff to return the XDP outdrive and parts to defendants without providing compensation, [DE 1 at ¶ 11], and must have occurred each time plaintiff brought the boat in for service and received replacement parts. Plaintiff obtained service on the outdrives as early as 2008 and again in 2009, 2011 and 2013. *Id.* at ¶¶ 15–22.

The statute of limitations for an unjust enrichment claim is three years. *Stratton v. Royal Bank of Canada*, 712 S.E.2d 221, 227 (N.C. Ct. App. 2011). The claim runs from the date it

7

accrues, or "when the wrong is complete and, thus, a plaintiff is entitled to assert the claim in court." *Celgard, LLC v. LG Chem, Ltd.*, No. 3:14-CV-00043-MOC-DC, 2015 WL 2412467, at *16 (W.D.N.C. May 21, 2015) (citation omitted). The limitations period for a conversion action is three years. *Stratton*, 712 S.E.2d at 227. "As a general rule, the claim accrues, and the statute of limitations begins to run, when the unauthorized assumption and exercise of ownership occurs—not when the plaintiff discovers the conversion." *Id.* Each of plaintiff's claims of unjust enrichment and conversion occurred more than three years before the filing of his complaint, and thus are time-barred.

Plaintiff's final cause of action alleges negligent infliction of emotional distress. Plaintiff alleges that he and his family suffered severe emotional distress "when [his] Boat began sinking in the open ocean and when the Engines seized leaving Plaintiff and passengers stranded in the open ocean." [DE 1 at ¶ 79]. Plaintiff alleges he was "terrorized" this failure and that the "emotional impact" of this outdrive failure caused "extensive damage to Plaintiff." *Id.* at ¶ 13, 14.

The statute of limitations for a claim of negligent infliction of emotional distress is three years. An action for negligent infliction of emotional distress begins to accrue when "bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." N.C. Gen. Stat. § 1-52 (16). The event upon which this claim is based occurred in 2011, and plaintiff has not alleged any facts to show that the harm occurred or became apparent at any later time. As this event occurred more than three years before the filing of the complaint, it is also time-barred.

In defense of many of his claims being time-barred, plaintiff argues that defendants should be equitably estopped from asserting statutes of limitations and repose against any claims

8

that might fall outside of applicable time periods because plaintiff detrimentally relied upon defendants' misrepresentations. "North Carolina courts have recognized and applied the principle that a defendant . . . may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." *Trillium Ridge Condominium Ass'n, Inc. v. Trillium Links & Village, LLC*, 764 S.E.2d 203, 216 (N.C. Ct. App. 2014) (quoting *White v. Consolidated Planning Inc.*, 603 S.E.2d 147, 162 (N.C. Ct. App. 2004)) (internal quotation marks omitted). When a defendant's actions, misrepresentations, or conduct amount to a breach of good faith and induce delay in filing, the defendant may be estopped from pleading and relying on the defenses of statutes of limitation and repose. *See Robinson*, 703 S.E.2d at 889. In order to establish equitable estoppel as a bar to application of the statute of limitations, a plaintiff must first show that: (1) the defendant must have conducted itself in a manner "which amounts to a false representation or concealment of material facts"; (2) this conduct must have been intentional; and (3) the defendant must have "knowledge, actual or constructive, of the real facts." *Stratton*, 712 S.E.2d at 230 (citation omitted). A plaintiff must also demonstrate that: (1) it has "a lack of knowledge and the means of knowledge as to the real facts in question" and (2) it "relied upon the conduct of the party sought to be estopped to his prejudice." *Id.* Equitable estoppel is not appropriate "where 'the party claiming it was put on inquiry as to the truth and had available the means for ascertaining it.'" *Hance v. First Citizens Bank & Trust Co.*, 775 S.E.2d 926 (N.C. Ct. App. 2015) (quoting *Hawkins v. M & J Fin. Corp.*, 77 S.E.2d 669, 673 (1953).

Plaintiff alleges that defendants made misrepresentations about whether parts were defective, whether repairs were covered by warranties, and the fitness of the parts, and that these misrepresentations caused him to delay discovering the defects or filing a suit. Plaintiff also

9

argues that defendants acted in a manner inconsistent with alleged warranties in place. However, plaintiff's own complaint belies the allegation that plaintiff was not aware of or was unable to ascertain the truth of these matters. Plaintiff acknowledges that "Defendants issued service bulletins in late 2008, April 2009, and July 2009 notifying Volvo Penta authorized dealers of XDP outdrive repair requirements." [DE 1 at ¶ 35]. Moreover, plaintiff states that he was informed by defendants in March 2013 that "he needed to completely replace the XDP Outdrives," *id.* at ¶ 21, and that in that same month he "came to suspect that the XDP outdrives were defective" and he "began exploring options to sell the Boat." *Id.* at ¶ 19. He also alleges that he discovered at this time issues with respect to the XDP outdrives going back to August, 2008. *Id.* at ¶ 11. Thus, plaintiff, by his own admissions, was plainly aware of any issues with the parts and boat by March of 2013, and yet he does not explain why he then waited four years and allowed many of the applicable deadlines to lapse before filing this lawsuit. Accordingly, equitable estoppel of the time limitations is not appropriate because plaintiff was put on inquiry as to the truth of these alleged misrepresentations and had the means to ascertain the truth of these matters. Plaintiff is not excused for his delay in pursuing this lawsuit, and all the claims that are time-barred must be dismissed.

Finally, the Court turns to the legal sufficiency of plaintiff's remaining claims which are not time-barred: inadequate warning and inadequate design or formulation as to the replacement parts he purchased in 2011 and 2013. To recover under § 99B-5, a plaintiff must show "(1) the manufacturer or seller acted unreasonably in failing to provide [adequate] warning or instruction; (2) the failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought; and (3) either section 99B-5(a)(1) or 99B-5(a)(2) has been satisfied." *Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 2189774, at *2 (E.D.N.C. May 11,

2015). To recover under § 99B-6, a plaintiff must show "that at the time of [a product's] manufacture the manufacturer acted unreasonably in designing or formulating the product" and "that this conduct was a proximate cause of the harm for which damages are sought." N.C. Gen. Stat. § 99B-6(a).

Defendants argue that the remaining claims of inadequate warning and design must fail as a matter of law because they are barred by the economic loss rule. That rule prohibits the purchaser of a defective product from bringing a tort action against the manufacturer or seller of that product to recover purely economic losses sustained as a result of that product's failure to perform as expected. *See Moore v. Coachmen Indus., Inc.*, 499 S.E.2d 772, 780 (N.C. Ct. App. 1998) ("To give a party a remedy in tort, where the defect in the product damages the actual product, would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract."); *Chicopee*, 391 S.E.2d at 217. "The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective." *Moore*, 499 S.E.2d at 780. For this reason, under North Carolina law, products liability claims cannot be brought "where the alleged defects of the product manufactured by the defendant caused neither personal injury nor damage to property other than to the manufactured product itself." *AT & T Corp. v. Med. Review of N. Carolina, Inc.*, 876 F. Supp. 91, 95 (E.D.N.C. 1995) (quoting *Reece v. Homette Corp.*, 429 S.E.2d 768, 769 (N.C. Ct. App. 1993)).

Plaintiff has claimed that his damages for these two claims consisted of "costly repairs, loss of Boat use, substantial loss in value and resale value of the Engine parts and Boat." [DE 1 at ¶¶ 43, 55]. It does not matter that plaintiff claims only the engine parts were defective but that damages occurred to the entire boat, because under North Carolina law "when a component part

11

of a product or a system injures the rest of the product or the system, only economic loss has occurred." *Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N. Carolina., Inc.*, 623 S.E.2d 334, 340 (N.C. Ct. App. 2006); *see also Wilson v. Dryvit Sys., Inc.*, 206 F.Supp.2d 749, 753 (E.D.N.C. 2002), *aff'd* 71 F.App'x 960 (4th Cir. 2003). Plaintiff has claimed purely economic loss and such loss in not recoverable under tort law in a products liability action in North Carolina. Therefore, plaintiff has failed to plead a legally sufficient claim and these remaining actions must also be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [DE 8] is GRANTED. The Clerk is DIRECTED to enter judgment accordingly and close the case.

SO ORDERED, this 25 day of August, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

12